In the next case is Trading Technologies versus IBG and Trade Station, 2017, two to zero. Case number is 054. Mr. Cannon is appellant. With respect to the 411, I just wanted to follow up one last thing on the public accessibility issue. Mr. Kawashima testified at Appendix 9668. The question was asked, Mr. Kawashima talked a little bit about this exhibit, the manual, and you said it was made available at the TSE offices for participants to pick up, correct? Answer, yes. And one of counsel's questions, I was a little confused, so I want to clear something. Did you personally hand these out to participants? I did hand out some of them, all of them, not all of them. So he testified that he handed out a few of them. The problem here is that even if you were to accept that testimony as true and that they were given out to, again, we don't know who actually picked it up, so we don't have the roadmap for a person of ordinary skill in the art to get it. Even if it ended up in a TSE member's file, how would a person of ordinary skill in the art locate it? We just don't have any facts to support that. And that's the problem with the public accessibility case. The board, in its opinion, tried to fill in by saying, well, actually there is evidence that the TSE members employed GUI designers. The parties agreed a person of ordinary skill in the art has to be a graphical user interface designer with an understanding of electronic trading. So the board said, yep, the people that actually picked up the document were GUI designers. And I want to be very clear on this. There is no evidence of that in the record at all, that any of the members employed GUI designers, none. With respect to the 411 patent, so the issue on the 411 patent is how does it differ from the 132 and 304 patents that we've discussed? And I'd like to start with the 101 issue. The board erred in finding... Well, you know, it's just so much fun to talk about 101, and seldom do you get a do-over and you've got like three in a row here. How about you move on to obviousness on this one? Sure. Because either of those resolves all the claims, correct? Correct. Yes. So yeah, the 103 issue is the same for the 132 and the 411. So TSC is not prior art. Even if it was prior art, the 103 case is lacking because the prior art is missing an element in the claim. The board erred by finding that the TSC manual included the claimed order entry region. So the claims require an order entry region along a static price axis from which you send orders. It's a very specific limitation. TSC doesn't have that claim element, and neither does Belden, the other reference that they cite to. So the board, the element's just missing. And not having that element, their 103 case fails. There's also no motivation to combine the Belden reference with the TSC reference. The board relied on Belden's reference to speed, but the reference to speed doesn't tell you anything about what to do with the TSC reference. So in TSC, in order to actually enter orders, you click on what's called a board screen and it opens a new order input window. It's an entirely separate window that is not an order entry region as claimed. It's not along a static price axis. And so in that new order input window, you have to do multiple actions to send an order. And so combining the idea of speed from one reference to TSC doesn't get you to the invention. It's clear that what the board did was the board looked at our patent that shows an order entry region along a static price axis where you send orders, and it looked at our patent as a roadmap and then made the combination. And it's clear because none of the references, individually or in combination, disclose that very specific order entry region. The TSC manual discloses double-clicking along a price axis on the board screen, and that opens a new order input window. Is that correct? Correct. You click on the board screen and it opens a new order input window. And then Belden discloses submitting an order with a single click? It does disclose... Because I think the TSC manual is a double-click. Belden is a single-click, right? Belden does disclose. It's different. It's in the PIP paradigm, but yes, it does show an icon that you can click on to match an order. And then what about Togr? Yeah, Togr is the reference relied on for the default quantity, which is another element of the claim. Right. So why isn't the combination of the three of those disclosing the order entry region? Because the order entry region is not disclosed in any of the references at all. There's no teaching that gets you to the board screen to send orders from the board screen. In other words, there's no order entry region along a static price axis from which you send orders. Now, IB says we're attacking the references individually. And they cite this case in Ray Merck. That's not what TT is doing. Attacking references individually is when you have all the elements in the prior art and you say, prior art reference A is missing this, and prior art reference B is missing some other stuff. That's attacking references individually. That's not what TT is doing. What TT is saying is that that claim element is not in any of the references. And without that, their 103 case fails. With respect to the objective evidence in this case, the board erred by finding that the objective evidence did not outweigh what it found to be a strong case of obviousness. This is not a strong case of obviousness. TSE doesn't even qualify as prior art. And even if it did, it's missing a claim element. But putting that aside, the overwhelming evidence in this case shows that even if they did have all the elements, the invention can't be considered obvious under any circumstances. The root of the error with respect to the objective evidence in this case has to do with Nexus. The board found that TT was not entitled to the presumption of Nexus because MD Trader, TT's commercial embodiment, was not the invention. That was the root of the error. Part of the problem for me is because your expert had a claim chart that sort of compared it to MD Trader and showed how each limitation was present, which I think may have overcome that problem. But the board said that you technically messed up somehow there procedurally on a regulation 42.6A3 and that therefore they weren't going to rely on that evidence or something. Yeah, and I think that was wrong. I think it was overly harsh by the board to do that because our patent owner response clearly argued and said that MD Trader was launched in 2000. MD Trader is the commercial embodiment. Every element of the claims is present. Well, your response says that, but the only evidence is this expert claim chart, right? Well, the argument has to be in the patent owner response, which it was. And under the rules, affidavit and evidence do not have to be in the patent owner response. They can be attached as evidence, the affidavit and the supporting claim chart. But you think it's enough to simply allege that it has all the elements and that that entitles you to Nexus? You don't think that you have to sort of make any kind of proffering that it has all the evidence and allegation is sufficient? Because the proffering comes in the expert report declaration. That's right. And the declaration and the claim chart are evidence supporting our argument. The argument has to be in the POR. Our argument is MD Trader is the invention, which, by the way, no one has ever disputed ever that that wasn't the commercial embodiment. IB can't point to a single element from the claims that's missing in MD Trader. But the board believed that we had to put the, you know, the claim chart into our essentially into our patent owner response, which we think is just not required under the rules or the regulations. 37 CFR Section 42.638 says exhibits required evidence consisting of affidavits, transcripts must be filed in the form of an exhibit. And that the regulation only prohibits incorporation by reference of arguments, not evidence. So it's not like we were reaching outside the patent owner response and then putting in an entirely new argument because our patent owner response clearly made the argument. TT was entitled to a presumption of nexus. And when you look at the overwhelming evidence in this case, initial skepticism followed by commercial success, copying, widespread praise. In 30 years of practicing patent law, I've never seen this much evidence of objective evidence. And the board, I think, did everything it could to try to chip away at that presumption so that then it could just dismiss or hand wave over this overwhelming evidence. Putting aside the presumption of nexus, the board also made another error, a big error. And that is even without the presumption of nexus, TT put in overwhelming evidence that the objective evidence was actually tied to the claim features. Putting aside the presumption. And so TT submitted the declaration of Mr. Thomas, the declaration of Mr. Burns, the declaration of Mr. Giannopoulos, the declaration of Mr. McDonough. TT put in trader declarations, third-party trader declarations, singing the praises of TT's invention and tying the benefits, the evidence, not only to MD Trader, but also to the claim features. I know I'm the one that pushed you into 103. Can I now ask you a 101 question? Sure. Because I just don't want you to not be able to answer it before your time runs out and have me ask the other person. Do you think all these cases have to stand or fall together on 101? Yes. And I think it's clear from CQG, they found that the claims, you know, clearly meet step one. It's a legal question. You look at the claim. Yeah, but it's not binding, right? It's not binding because A, it's non-prex and B, these are different defendants. So even with regard to the identical patent, it's not binding. Your Honor, you know, it's not binding. But if this court were to say two years ago this patent meets step one and then two years later says magically it doesn't meet step one, our patent system's in real trouble if that's the result. Do all the cases rise and fall on our finding of whether we're looking at a technological invention or not? They do. They do. All of these patents, the 411 patent, when you look at the 411 patent in terms of the difference in the 411 from the 132 and 304, there's no meaningful difference between the claims of the 411 and the 132, 304 patents. In fact, I.B. admitted in the underlying case that was stayed, the BGC case, that there are, quote, no appreciable differences between the patents and suit from the perspective of 101. And I have the site for that. It's Trading Technologies versus BGC. It's docket number 708, page 4, note 5. So when the case was being stayed, I.B. said, hey, for purposes of 101, all these assertive patents, which includes the 132, 304, and 411, they all rise and fall together under 101, which we believe is also true because the 411 claim has no meaningful differences between the 132 and 304. Well, but the board said that this case involved different arguments and different evidence, in addition to being different defendants and being a different patent. I understand it's a continuation and the spec is identical. But the board said this case had different arguments and evidence. It's got to be the case that different defendants can come along with different arguments and different evidence and get a redo. That's the way our system works. I mean, it's not the CQG case is not binding. And I understand a party can try to make the same argument. But how many times does TT going to have to face the 101 question on step one? This court has looked at these claims, have found that they're specific, that they have a specific technological improvement over the prior art. That's the opposite of an abstract idea. And now for I.B. to come to this court now and say, no, no, no, no. Now it's all the sudden. Do these claims recite the static price access limitation? They do not recite. So one of the things the Federal Circuit expressly relied on in CQG as supporting its determination of eligibility is not present in these claims. The 411 patent solves problems of visualization. The 411 patent, if you look at the difference. But you see, I'm just you're saying everything is a standard fall together. There are a lot of differences. There's different arguments, different evidence, different claim limitations. And one of the very limitations we cited in CQG as supporting the eligibility isn't present in this patent. And so I guess I'm just sort of hesitating to think that you're all or nothing suggestion. I mean, it's appealing to me. Trust me. But I don't know. I don't know what to do with this. If you look at the 411 claim and you compare it side by side. I think the dissenting judge at the board put it best when he said taking out the word static doesn't cast this claim into the realm of abstractness. And why is that? Because the 411 claim has specific structure, makeup, and functionality. It has a price access. It has indicators. Doesn't it also function the same way even though it doesn't recite a static price index? I mean. That's exactly right. The functions are still there. The functions are still there. You have a price access. And those functions are defined by the claim. That's right. You've got relative movement of the indicators. You've got an order entry region. What's the problem here? Solving problems with visualization, right? Isn't that what the spec says that this is all about? I mean, that sounds awfully abstract to me. It's not because the figure two style screen and the conventional order tickets didn't provide. Those particular graphical user interfaces didn't provide any visualization. As filed by the eSpeed court and in CQG, the patent solved the visualization problem. It's a usability problem. Thank you, counsel. That consumes your time for this appeal. Mr. Picard? Thank you. I'm going to answer Judge Moore's question first. So is our position that the 411 does not rise and fall with the 101 determination that may occur on 304 and 132? That surprises me. I thought you'd say, no, they all fall. And he'd say they all rise. I mean, I thought you'd both be in lockstep on everything rising and falling together. Here's why I say that. We have – it's possible that they may come out differently. As Your Honor has noted, there's no static price index in the 411, which has been the centerpiece of the patent eligibility arguments that Trading Technologies has raised. Without that static price index, they don't solve the problem that they've identified. But as I covered with your opponent, the claims still build that same structure that functions like a static price index, right? I mean, you have bids and an asset are moving relative to the price index. That is a static price index when you have bids and an asset are moving relative to the price. So there's no dispute that the 411's claims the axis there may move. It's not static. And so even if you have the relative movement of the inside market, it's entirely possible that the axis is moving, and you could miss your intended price. I want to return to Judge Moore's question. So the reason I'm not unequivocal in this is depending on where this panel falls on the question of whether there are subsidiary fact findings on Step 1 analysis, it may be the case that a remand is appropriate in the first two cases that have been argued today, whereas they might not be in the 411. Another key difference in the 411 case, the board has made fact findings that the claims of the 411 patent are directed to fundamental economic practice. There's no challenge to the substantial evidence underlying that determination. So I think it's possible that this case could come out differently than the others. Turning quickly to the question of public accessibility, I want to talk again about the Noble BioCare case. I think the facts there are instructive here. The evidence in that case was that the authors or distributors of the relevant manual there, they distributed at a dental conference, and the evidence was that the manual only reached two people who were co-owners of a dental supply company. And that was sufficient for this court to find public dissemination. There was no need for actual delivery to skilled artisans. There was no finding that skilled artisans were at the relevant conference. And here we have, again, the testimony of Mr. Kawashima. The manual question was given to more than 200 participants, that is, traders on the exchange, participants. It's reasonable for the board to have concluded that that was the relevant interest of public. And I think under Noble BioCare, the public dissemination question is resolved. If we can turn to the 103 issue, the missing element. They had a lot of objective evidence or addition, a lot. It's not actually the most I've ever seen. I would urge your opponent to maybe read Transocean, the opinion in Transocean. But nonetheless, they had a lot. It was a lot. It's really up there. It's among the cases with the most, the largest amount of objective addition of non-obviousness that I've ever seen. So it's a lot. It is a lot. Yeah. That can't overcome it? The volume is not the relevant legal test. Well, the weight. I mean, it's got to be weighed against. It does need to be weighed. If we look at what the board did here, they did criticize the procedure in which Trading Technologies submitted its evidence of nexus. But the board did look at each category of secondary indicia. Most importantly, it considered the nexus question. And I think of most relevance here was in its discussion of the commercial success category. And what the board found, as we pointed out to them, was that the MD trader, the product that they had the claim chart for, was a 2014 product. And if you step through every category of secondary indicia that they rely on, whether it's initial skepticism, praise by others, copying, and so on, all of that evidence relates to the 2004 or earlier time period. And the board correctly pointed out that Trading Technologies didn't put in any evidence about how the 2014 product related to the products that were in the market in the relevant window. For all of this evidence that they put in, they fundamentally failed to create a nexus. This just applies to commercial success, correct? Well, if you read their briefs here and if you look at their showing below, the only nexus showing they made was between their quote-unquote commercial embodiment and the claims. But the commercial embodiment was from an irrelevant time period, the 2014 time period. And if you step through every category, all of that evidence relates to a much earlier time. And to be fair, the board did in many instances. Well, the copying and the skepticism and the other stuff, though, that's not a factor. Well, we can take those up individually. So the skepticism, the board relying on Trading Technologies' own words, said the skepticism wasn't, even if we assume, by the way, nexus, the skepticism wasn't tied to the claim features because Trading Technologies said in its patent in response. Their skepticism to any changes in the industry, and they couldn't show why the skepticism in this instance had anything to do with the claim convention. Same with the initial praise. It was all very broad and wasn't tied to the features themselves. Again, the copying, they talk about widespread copying. There was one alleged instance of copying. That was the eSpeed, which went to trial in 2004. They put in trial demonstratives that were used, I assume, at closing to show that eSpeed infringed. But we still don't know what the product that they copied ever looked like. There's no evidence in this record as to what they copied. Why do we need to know this? It's their theory that the copying was eSpeed copied MD Trader, not the patent. Well, they don't have to prove that the copying is copying the claimed invention, not their product. Exactly. But the claimed invention, they contend that the claimed invention was embodied in their product. Well, but the claims embody the claimed invention. So all they had to show was that their product was a copy of what they'd invented. They don't have to show that their product was some carbon copy of their embodiment as commercially marketed. So I don't see how you're criticizing that evidence. Well, what I'm saying is what they put in is the mere fact that eSpeed infringed the patents is not enough. They're trying to go one step further. So they infringed and arrived at the claims because they copied the MD Trader product. My point being is that that copying was of a product that we don't know what it looked like, how it functioned, anything of the sort. So you can't infer that by the fact that eSpeed may or may not have looked at MD Trader that that's how they arrived at an act of infringement. If we turn to commercial success, the board correctly pointed out, again, the MD Trader product was from the 2014 time period. The evidence that they put in for commercial success related to 1996 to 2006. There can be no connection there. And they didn't deal with the fact that the MD Trader product was sold as a suite of products and how to cordon off the success that was due to the patented features. Well, if they were entitled to a nexus, it wasn't their burden to prove all that. Well, the board found in the commercial success that even if we assume a nexus, it has been sufficiently rebutted on this element for the reasons that I've just stated. It's in the wrong time period. It was part of a larger suite. And that there was general growth in the commodity electronic product. Well, it doesn't seem to me that the fact that it's part of a larger suite would ever be sufficient to rebut it. It would be sufficient to question whether it's correct. But if they get a presumption, you have to do more and create a question. You actually have to rebut the presumption. The mere fact that the... I mean, the timing is very favorable for you. I think the timing is dispositive on all of this. It's really very favorable for you. I can't argue that. I think the timing is dispositive. For better or for worse, trading technologies chose to pursue their nexus theory by saying our nexus is the MD Trader product. All of the evidence they intend to rely on for objective indicia is from the wrong time period. And that cuts across the board. So if you read their briefs in this case, they point only to evidence about the MD Trader product from some earlier time period as being the supposedly disregarded nexus. If I can, I'd like to briefly touch on the missing elements here. The board's findings are supported by substantial evidence. Just a moment. If you look at Claims 1 and 26, what TSE showed was a static price axis. And when you clicked on the TSE order regions, a separate order window would pop up. Belden didn't... It had single-click trading, but it didn't associate the single-click trading function with the static price axis. Citing to the Roman declaration and the joint appendix at 4818, Mr. Roman explained why the benefits of the Belden feature would have been obvious to combine with the static price axis. No one there were penalized for not using all their time. Someone really smart said that one. Unless this panel has any additional questions, I will. Thank you, Mr. Picard. Ms. Allen, is there anything you need to say? No. Thank you. Mr. Gannon has some rebuttal time. Thank you. Your Honors, I invite you to look at the declarations of the traders, the third-party traders, in terms of the time frame on when they talked about the features and how... Actually, Mr. Gannon, I erred. You didn't have any rebuttal time. But since you're standing there, I'll give you a minute. Thank you, Judge Lurie. The issue that the evidence wasn't in the right time frame is just not correct when you look at the evidence. Look at the trader declarations. Look at the declarations from the other individuals that we cited to. With respect to the commercial success, again, I think on that issue, the Board was just trying to dismiss the evidence by saying, well, maybe something else caused the success, when in reality, the only evidence put into the record was evidence of MD trader and the claim features causing the success. Same with copying. This invention was copied by virtually the entire industry. And other evidence that the Board ignored is that people even greater than ordinary skill in the art actually had the invention in front of them and couldn't arrive at the invention, even with hindsight. When eSpeed tried to copy the invention, they couldn't even replicate it, even when they had it right in front of them. Thank you, Mr. Gannon. You can keep standing.